IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| RICKY EUGENE ROSS, | § | |
| TDCJ-CID NO. 1001745, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-08-083 |
| | § | |
| RICK THALER,[1] et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Ricky Eugene Ross, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed this civil rights action under 42 U.S.C. § 1983 claiming that TDCJ-CID officials violated his constitutional rights by denying adequate medical care for an alleged head wound. Pursuant to FED. R. CIV. P. 12(b)(6), the defendants have filed two Motions to Dismiss (Docket Entry Nos. 16 and 19) asserting that Ross's claim is barred by limitations and the exhaustion provisions of the Prison Litigation Reform Act (PLRA). For the reasons explained below, defendants' motions will be granted.

**I. Allegations**

Ross claims that the defendants violated his Eighth Amendment right not to be subjected to cruel and unusual punishment by exposing him to dangerous conditions which resulted in a head wound and then delaying access to medical treatment for the head wound. The claim stems from a confrontation with his cell mate, Isidro Ortiz, on July 5, 2006. Ross alleges that he made numerous attempts to alert officials that he was a potential target for gang assault and that Ortiz was

---

  1. Petitioner originally named former Texas Department of Criminal Justice (TDCJ) Director Nathaniel Quarterman as Respondent in this suit. Thaler has since replaced Quarterman as TDCJ Director.

associated with a gang. *See* Docket Entry No. 1 at 6. Ross claims that the officials either ignored or discounted his warnings and made no attempt to protect him.

Ross states that Ortiz came into their shared cell on July 5, 2006, and demanded that he leave it immediately. Docket Entry No. 1 at 6. Ross answered that he did not feel well and refused to comply. Ortiz approached Ross who attempted to ward him off. However, Ross passed out, fell down, and injured his lip. Ross asserts that he does not remember anything after he fell but states that Ortiz pushed the "Emergency Call Button" calling for help without success. Forty-five minutes elapsed before the cell doors opened for chow. When Ross left the cell, another inmate saw his injury and said that he needed stitches. Ross then asked for help from the correctional officers.

A correctional officer brought him some ice and called the medical department. Another officer brought out a wheelchair to take Ross in for treatment. However, Sergeant Ronald Lott ordered the officer with the wheelchair to cuff Ross, and Ross was taken to a holding cell. Ross claims that he requested his asthma medication but was denied. *Id.* His other requests for medical attention were also refused although his mouth and buttocks were photographed. *Id.* Ross claims that security personnel in the area were aware of his injuries, some remarking that a "little mexican [sic] whipped this M----r F-----'s a– " *Id.*

Ross complains that he had to wait sixteen hours before seeing jail medical staff. Two nurses examined his wound and expressed concern about the delay in bringing him in for treatment. They then said that they could not do anything more until he was seen by a physician. The doctor examined Ross 45 minutes later and stated that correctional officers should have taken Ross to the hospital or called him earlier. He informed Ross that he was unsure about stitching the wound due to the time lapse involved and warned him that he would have to tear the wound open to clean out any infection. The doctor then asked a nurse to note the delay in bringing Ross to him because he

did not want to held liable for any harm that might have resulted from the delay. After giving the doctor permission to operate on him, Ross received four stitches and his wound was closed.

Ross alleges that he has suffered serious headaches since hitting his head. He also fears that he is losing his eyesight, allegedly due to a slipped disc. Docket Entry No. 1 at 9. He claims that he has been diagnosed with a degenerative spinal condition. He further complains that he suffers from hypertension and asthma, although he does not explain how these conditions relate to his accident. Ross seeks compensatory and punitive damages for his injuries in addition to the embarrassment that he experiences. *Id.* at 4.

## II. Defendants' Arguments and Plaintiff's Response

The defendants contend that Ross failed to comply with the PLRA's requirement that a prisoner must first exhaust available institutional grievance procedures before filing suit. 42 U.S.C. § 1997e. In support of their argument, the defendants have provided copies of grievances filed by Ross after the incident. *See* Docket Entry Nos. 16-1, 16-2.[2] The defendants point out that Ross's grievances, while mentioning his accident and injury, do not concern the alleged denial of medical care. Instead, the grievances challenge a disciplinary case that was brought against Ross for fighting. The defendants have also submitted the Disciplinary Report and Hearing Record, No. 20060316678, in which Ross was found guilty and punished. Docket Entry No. 16-3. The defendants argue that the grievances challenging the disciplinary proceedings failed to alert prison officials of the complained of actions alleged by Ross in his federal civil rights complaint and, therefore, denied TDCJ-CID the opportunity to address them before this suit was filed.

---

[2] The second Motion to Dismiss (Docket Entry No. 19), filed by Scott Tinsley, presents arguments identical to those presented in the first motion (Docket Entry No. 16) filed by the other defendants. It is also supported by the same documents. Therefore, the court will only refer to the attachments to the first motion.

The defendants also contend that this suit is untimely under the applicable statute of limitation period. They note that the complained of acts occurred on or before July 5, 2006, and assert that this action was not filed until December 18, 2008.

Ross has filed a Memorandum (Docket Entry No. 17) opposing the defendants' Motion to Dismiss. He argues that his grievances set forth facts which were sufficiently detailed to notify the defendants of his medical problem. With regard to the timeliness of his complaint, Ross argues that the limitations period is tolled while his administrative grievances were pending. He also alleges that he filed a complaint in state district court and contends that the period was tolled until that court issued an order disposing of that case.

### III. Analysis

A. Defendant' Motions to Dismiss - Motions for Summary Judgment

The defendants' Motions to Dismiss (Docket Entry Nos. 16 and 19) are filed pursuant to FED. R. CIV. P. 12(b)(6). A dismissal under Rule 12(b) is appropriate "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Giddings v. Chandler*, 979 F.2d 1104, 1106 (5th Cir. 1992). The court accepts all well pleaded allegations in a complaint as true and views them in the light most favorable to the plaintiff. *Partridge v. Two Unknown Officers*, 791 F.2d 1182, 1185-86 (5th Cir.1986). Further, the court must liberally construe the allegations of a pro se complaint. *Haines v. Kerner*, 92 S.Ct. 594 (1972). A court may not look beyond the pleadings in ruling on a motion to dismiss filed under Rule 12(b)(6). *Mahone v. Addicks Utility District*, 836 F.2d 921 (5th Cir. 1988). Dismissal for failure to state a claim is not favored by the law. *Id*.

As noted in the previous section, the defendants in this action have attached copies of grievances which apply both to the questions of administrative exhaustion and the timeliness of the

action. Although the defendants' Motions to Dismiss rely in part on matters outside of Ross's complaint, Ross does not dispute the exhibits attached to the defendants's motions. Because matters outside of pleadings have been presented and these matters have not been disputed, the court shall treat the defendants' motions as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and shall make its determination pursuant to summary judgment standards. FED. R. CIV. P. 12(d); *Campbell v. Upjohn Co.*, 498 F.Supp. 722 (W.D. Mich. 1980), *aff'd* 676 F.2d 1122 (6th Cir. 1982).

    B. Summary Judgment Standards

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows that the non-movant cannot carry its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the burden shifts to the non-movant to present specific facts showing

that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

B. Exhaustion of Administrative Remedies

Before a prisoner can present a conditions claim in federal court, he must first exhaust those prison administrative remedies which are available to him. 42 U.S.C. § 1997e. The purpose of this provision is to filter out frivolous claims and to allow prisons to address legitimate problems and improve their administration. *Porter v. Nussle*, 122 S.Ct. 983, 988 (2002). Hopefully, this would lessen the number of prisoner lawsuits while improving their quality. *Id*. A prisoner's failure to exhaust is an affirmative defense. *Caribe v. Lappin*, 492 F.3d 325, 327 (5th Cir. 2007), *citing Jones v. Bock*, 127 S.Ct. 910, 921 (2007).

The TDCJ system has a two-step grievance procedure which must be completed in order to comply with section 1997e. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999). The TDCJ Offender Handbook outlines the necessary steps. Docket Entry No. 16-4 (Exhibit 4) at 2. If an inmate has a complaint, he has 15 days from the date of the alleged infraction to file a Step 1 grievance with the Unit Grievance Investigator. *Id*. The inmate must then wait up to 40 days for a response. If the response is not satisfactory, the inmate must then file a Step 2 grievance within 15 days and wait another 35 days for response. *Id. See also Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). To exhaust, a prisoner must pursue a grievance through both steps in compliance with all procedures. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired. *Powe*, 177 F.3d at 394.

When considering whether a prisoner has adequately exhausted the administrative grievance process, the court must determine whether the plaintiff has given the prison authorities "time and

opportunity to address complaints internally." *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004), *quoting Porter v. Nussle,* 122 S.Ct. at 988. The court can only reverse a prison's administrative decision which was made in error over an appropriate objection or grievance. *Woodford v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006). When presenting his facts, the prisoner must provide a general explanation of which of his rights were violated as well as how they were violated and, in most cases, who violated them. *See Johnson*, 385 F.3d at 517. While it is not necessary for a prisoner to have presented a full fledged legal theory of how his rights have been violated, he must present enough facts to inform the authorities about the problem and a chance to respond to it. *Id*. at 518; *see also Wilbert v. Quarterman*, 647 F.Supp.2d 760, 766 (S.D.Tex. 2009).

Ross filed a Step 1 Grievance (# 2006192293) on July 10, 2006, five days after the incident. Docket Entry Nos. 16-1. Although timely, Ross's complaint did not concern denial of adequate medical care or protection from inmate assault as alleged in his federal civil rights complaint. Instead, the grievance challenged the decision of a disciplinary hearing officer who found Ross guilty of fighting with Ortiz. *See* Docket Entry No. 16-3, Disciplinary Hearing Report and Hearing Record. Ross describes how he blacked out and hit his head against a toilet. Docket Entry No. 16-1 at 2. He also reports that he was seen by a doctor and received an EKG, X-Rays, and lab work. *Id*. at 3. At no place in the grievance, does Ross imply that he was denied medical care. Instead, he claims that he was not involved in a fight. Accordingly, the warden's response concerned the testimony given at the disciplinary hearing and whether there were any due process errors. *Id*. at 4. Likewise, Ross's Step 2 Grievance, which was filed two days after the warden's response to Ross's Step 1 Grievance, also challenged the outcome of the disciplinary proceeding and did not include any language indicating that Ross was dissatisfied with the medical care that he received or that he was unnecessarily exposed to inmate violence. Docket Entry No. 16-2. Consequently, the

official response to the Step 2 Grievance was only concerned with the disciplinary proceedings and no due process errors were found. *Id*. at 3. Ross's grievances, while timely, did not provide sufficient facts or arguments to allow TDCJ-CID to address his claim of denial of medical attention. It is not enough that Ross filed grievances which may have alluded to the incident in question but failed to raise the specific ground for relief. *See Wright*, 260 F.3d at 358 (PLRA's exhaustion requirement does not allow for "substantial compliance," inmate must fully utilize administrative procedures). Therefore, Ross's prisoner civil rights complaint is subject to dismissal under 42 U.S.C. § 1997e(a).

### C. Statute of Limitations

The defendants argue that Ross's complaint is barred because it is untimely. When determining the statute of limitations period in a section 1983 action, the court looks to the forum state's personal-injury limitations period. *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998), *citing Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). In Texas, the statute of limitations period is two years after the date on which the cause of action arose. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Federal law determines when an action accrues. *Jacobsen*, 133 F.3d at 319. A cause of action generally accrues when "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Gonzales v. Wyatt*, 157 F.3d 1016 (5th Cir. 1998), *citing Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir. 1989).

Being a prisoner, Ross was required to exhaust available TDCJ-CID administrative remedies, as discussed above, before filing suit in federal court. *See* 42 U.S.C. § 1997e; Docket Entry No. 16-4. Consequently, the limitations period would be tolled during the pendency of administrative appeal. *Wright v. Hollingsworth*, 260 F.3d 357, 359 (5th Cir. 2001); *see also Harris v. Hegmann*, 198 F.3d 153. 158 (5th Cir. 1999) (prescriptive period tolled while inmate pursued his administrative

remedies as required by section 1997e).

Ross's Step 2 Grievance was denied on September 11, 2006. Docket Entry No. 16-2 at 3. Therefore, he had until September 11, 2008, to file his civil rights complaint. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). The District Clerk received Ross's complaint on December 18, 2008. This would normally be considered the filing date except for the fact that Ross is an incarcerated prisoner who must rely on his custodians to mail his pleadings for him. *Houston v. Lack*, 108 S.Ct. 2379, 2382 (5th Cir. 1995). Prisoner pleadings are generally considered to be filed when they are placed in the prison mail system for delivery to the courts. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The courts liberally construe when the pleading has been surrendered to the prison authorities for mailing and will often look at the date of the prisoner's signature to determine when this happened. *See e.g. Sonnier v. Johnson*, 161 F.3d 941, 945 (5th Cir. 1998). Ross neglected to sign his complaint, but he did sign a Motion for Appointment of Counsel which accompanied the complaint. Docket Entry No. 2. The date of the signature on that pleading is December 16, 2008. *Id*. In addition, the envelope in which the complaint was filed is postmarked December 17, 2008. Docket Entry No. 1-9 at 2. Therefore, the complaint was filed no earlier than December 16.

In addition to filing TDCJ-CID administrative grievances, Ross alleges that he filed a complaint in state district court which, he argues, toll the limitations period. However, he has not cited a cause number or identified the court in which the complaint was filed. The court has been unable to find any record of a state court proceeding filed by Ross against TDCJ-CID or its employees regarding the alleged denial of protection and medical care. Ross cannot rely on conclusory allegations to defeat the defendants' argument that his complaint is barred by limitations. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). Even if Ross were able to identify an actual state court proceeding concerning the same issues, it would be of no avail

because a pending state court action would not have tolled the limitations time period for this federal civil rights action. *Slack v. Carpenter*, 7 F.3d 418, 420 (5th Cir. 1993), *citing Colorado River Water Cons. Dist. v. United States*, 96 S.Ct. 1236 (1976). Ross has not presented any circumstances in which the period should be equitably tolled. *See Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002), *citing Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). Therefore, his complaint is subject to dismissal because it was not filed within the applicable period of limitations. The defendants' motions shall be granted, and this action shall be dismissed with regard to all claims under FED. R. CIV. P. 56.

## IV. Other Motions

Ross has filed a Motion to Amend (Docket Entry No. 8) in which he expresses his intention to sue the named defendants in both their individual and official capacities. The court will grant the motion although the amendment does not alter the outcome of this proceeding. *See Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993).

Defendant Scott Tinsley has filed a Motion for Leave to File Motion to Dismiss Out of Time. Docket Entry No. 18. Tinsley explains that his Motion to Dismiss (Docket Entry No. 19) was filed after the other defendants' motion because he had not yet requested representation from the State Attorney General's Office. The motion (Docket Entry No. 18) will be granted because Tinsley's Motion to Dismiss replicates the motion previously submitted by the other defendants and adds no new grounds for dismissal other than the inclusion of Tinsley as a defendant seeking dismissal. *See Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995).

Ross has submitted two motions in which he seeks additional time to conduct discovery. These motions were filed well after the defendants, who are state officials, filed their motions to dismiss. The court will deny the motions (Docket Entry Nos. 21 and 22) because further discovery

would be futile and would serve no purpose other than to waste resources and harass the defendants. *See Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986).

### V. Conclusion

The court **ORDERS** the following:

1. Ross's Motion to Amend (Docket Entry No. 8) is **GRANTED**.

2. Defendant Tinsley's Motion for Leave to File a Motion to Dismiss Out of Time (Docket Entry No. 18) is **GRANTED**.

3. The Defendants' Motions to Dismiss (Docket Entry Nos. 16 and 19) are **GRANTED**.

4. This action is **DISMISSED** with prejudice. FED. R. CIV. P. 56(c).

5. All other motions (Docket Entry Nos. 21 and 22) are **DENIED.**

**SIGNED** on this 18th day of March, 2010.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE